PEOPLE *v.* WERNER.

1. CRIMINAL LAW—RAPE—EVIDENCE—GREAT WEIGHT OF EVIDENCE. In the prosecution of a mother for aiding and abetting her husband in the rape of her daughter, the verdict of guilty, *held*, not so contrary to the great weight of the evidence as to justify reversal on that ground.

2. SAME—WITNESSES—HUSBAND AND WIFE—ERROR FOR PROSECUTOR TO CALL HUSBAND AS WITNESS. In said case it was error for the prosecutor to state before the jury that he would like to call defendant's husband as a witness, thus putting defendant in the position of refusing to let her husband, the claimed ravisher with her aid of her daughter, testify.

3. SAME—TRIAL—INSTRUCTIONS—ERROR NOT CURED.

An instruction that defendant had a right to object to her husband testifying, that she was not to be thereby prejudiced, and that the jury should leave the whole matter out of their deliberation entirely; *held,* not to cure the error, since there is an intimation therein that the objection excluded the witness, whereas the statute (3 Comp. Laws 1915, § 12555) excludes unless consent is given. CLARK, SHARPE, and STEERE, JJ., dissenting.

4. SAME—CURING ERROR IN CIVIL AND CRIMINAL CASES DEPENDS ON CIRCUMSTANCES.

While the error arising by transgression of the rule against calling a husband as a witness for or against his wife without her consent may be cured by prompt exclusion in a civil case, and by such exclusion accompanied by an unqualified admonition of the unlawfulness of the calling in a criminal case, whether the error is cured or not must, in any case, depend upon the particular circumstances disclosed.

5. SAME—CONTRADICTORY INSTRUCTIONS—HARMLESS ERROR.

Where the first part of contradictory instructions upon the issue of threats and force employed in the assault was more favorable to defendant than was her right, but the last part correctly stated the law, and if confusion was occasioned thereby it could not have been to the disadvantage of defendant, said error cannot be said to have harmed defendant.

6. SAME—TRIAL—INSTRUCTIONS.

Submission of issues to the jury in a criminal case under the head "as the prosecuting attorney claims," is not approved, although no point thereon is made by counsel.

Error to Oakland; Covert (Frank L.), J. Submitted June 14, 1923.     (Docket No. 106.)     Decided November 13, 1923.

Anna Werner was convicted of aiding and abetting in committing rape, and sentenced to imprisonment for not less than 15 nor more than 30 years in the Detroit house of correction.   Reversed.

*George E. Nichols* (*Doty & Cram*, of counsel), for appellant.

*A. Floyd Blakeslee*, Prosecuting Attorney, for the people.

WIEST, C. J.    Defendant was convicted of the crime of aiding and abetting her husband in committing rape upon her daughter, Elizabeth Nax.    Elizabeth Nax is the illegitimate daughter of defendant and was born and brought up in Germany and at the time of the alleged crime was between 16 and 17 years of age.    The defendant came to this country from Germany some years ago and was married to Frank Werner.    In February, 1921, Elizabeth Nax came from Germany to live with her mother and stepfather. It is alleged that the day after her arrival the offense was committed and the defendant actively assisted Frank Werner in committing the crime.    The trial brought before the jury sharp-cut issues of fact and the verdict found the rape committed by force and defendant's active assistance therein.    It is hard to believe that a mother could become so lost to all sense of motherhood and so depraved as to lend assistance to her husband in outraging her own daughter, but the jury so found and there was evidence justifying the verdict.

Frank Werner, the husband of defendant, but not the father of the girl, was convicted of the rape, previous to the trial of defendant, but his conviction was reversed and a new trial granted in *People* v. *Werner*, 221 Mich. 123.    The conviction herein is assailed as a woeful miscarriage of justice, resting upon the improbable and uncorroborated story of a wicked girl instigated by hatred of her mother.

We have gone over the record with care, have measured the claimed improbabilities with the claimed facts; viewed the disclosed life of defendant and her

illegitimate daughter; considered the possible animus of the daughter arising out of resentment at parental correction and disappointment over expected but not realized luxuries, and have noted the claimed prevarication of the girl, but cannot find the verdict so contrary to the great weight of the evidence as to justify us in setting it aside on that ground.

It is somewhat difficult to harmonize the friendly relations between the girl and her ravisher with the brute force she claims was exerted by him and her mother, but we constitute no reviewing jury. The girl is either a most vicious fabricator with talent comprehending the essence of the crime of rape, or else an innocent who has told just exactly what happened. Defendant was sentenced to prison for a minimum term of 15 years and the case is here on writ of error.

Many errors are assigned; but few call for opinion. The prosecutor stated in the presence of the jury that he would like to call Frank Werner as a witness. Objection was promptly made. The court sent the jury from the room. In the absence of the jury the prosecuting attorney admitted that he could not call Frank Werner against defendant's objection. The court sustained the objection. Was it reversible error to put defendant in the position of refusing to let the jury have the testimony of her husband, the claimed ravisher with her aid of her daughter? It was held to constitute reversible error in *People* v. *Trine,* 164 Mich. 1, and excused, for reasons not here present, in *People* v. *Osborn,* 205 Mich. 531. In giving instruction to the jury the trial judge stated:

"At the close of the case the prosecutor in your presence, called Frank Werner to the stand and an objection was raised. Now, gentlemen, I want to say to you that you are not to consider or give any weight to the fact that the prosecuting attorney called Frank Werner as a witness and to the objection to his being

sworn in this case. They had a right to make that objection for several reasons and this respondent is not to be prejudiced by the making of such objection and, therefore, you will leave that whole matter out of your deliberation entirely."

Did this cure the error? The fault in the instruction lies in the intimation that the objection excluded the witness from testifying and, even though the jury were told that the objection was proper and making it should not militate against defendant, this did not inform the jury that the calling of the husband was a violation of defendant's privilege. The exclusion of a husband from being a witness against his wife, in this kind of a case, stands as a complete bar, unless she consents, and it constitutes error to compel the defendant in the presence of the jury to assume the attitude of keeping out testimony, only admissible by virtue of her consent. The statute applicable to this case provides:

"A husband shall not be examined as a witness for or against his wife without her consent * * *." 3 Comp. Laws 1915, § 12555.

This does not mean that a wife, to have the benefit of the statute, must exhibit her want of consent to the jury by way of objection. The statute excludes unless consent is given. This the prosecutor knew. He had no consent. Under the circumstances above stated it was reversible error to compel defendant, in order to preserve her right under the statute, to object to the violation of the statute and thereby be placed in the position of keeping testimony from the jury.

This court has recognized a distinction, so far as reversible error is concerned, in transgression of the rule in civil cases, like *Zimmerman* v. *Whiteley*, 134 Mich. 39, and in criminal cases like *People* v. *Trine*, *supra*. In a civil case, involving nothing but dollars, a plaintiff seeking to enhance chance of recovery and

amount thereof, by way of exclusion of his wife as a witness, after he has testified to what his wife said in various interviews between his wife, himself and defendant, suffers no such harm, if called upon merely to invoke the rule, as to constitute reversible error. But in a criminal case liberty is at stake and the defendant must not be compelled to imperil the same by an appeal to the rule of exclusion and be left in the attitude of suppressing evidence. The statute excludes the calling in civil and criminal cases, and, therefore, to call in either class is a transgression of the statute. The error arising because of the transgression may be cured by prompt exclusion in a civil case, and by such exclusion, accompanied by an unqualified admonition of the unlawfulness of the calling, in a criminal case. But whether the error of the transgression is cured or not must, in any case, depend upon the particular circumstances disclosed.

Evidently the prosecutor thought there was some question about the relation of husband and wife between the defendant and Frank Werner because of a divorce proceeding in California, their passing as brother and sister, and defendant's going under another name, but this question was set at rest by the testimony of defendant and the following admission of the prosecutor: "I do not claim I could call him against her objection."

It is claimed there was error in the charge of the court because of contradictory instructions upon the issue of threats and force employed in the assault. The following extracts from the charge do appear to have been somewhat contradictory:

"By force is meant the application of such physical violence against the girl as to compel submission to the act of intercourse or threat of such force and violence or such threats of such force and violence as actually would and did in this particular case become so great as to overcome the possibility

of resistance on the part of the girl. It is not sufficient that mere idle promises or idle threats may have been made nor is it sufficient that the statement made by the respondent and somebody else in her presence that something would happen to the girl if she did not submit or that she would be prohibited from going freely about if she did not submit nor is it a sufficient threat of force if the girl was told by the respondent that she and her mother would be thrown out, if the girl did not submit. A threat of force on the part of the respondent or Werner in order to amount to force, which in law it must amount to in this case, must be such a threat of force as by its very nature makes it impossible for the girl to resist and such threats of force in this case must have been made at the time when the offense is alleged to have been committed, to-wit: the night of the 14th of February, 1921.

"It is the claim of the prosecuting attorney that at the time of the rape aforesaid the respondent was present in the house, that she knew that the girl did not desire intercourse, that she knew the girl was struggling and resisting the outrage. That she told the girl that she must not be silly, that it was customary for that sort of thing to occur to girls in America, and told her that if she did not consent Frank would throw them both out of the house, and I say to you that if you believe beyond a reasonable doubt that the respondent did these things, as the prosecuting attorney claims, then that would amount in law to such an aiding, abetting, and consenting as would make her guilty of the crime charged in the information."

It does not necessarily follow, however, that defendant has been harmed thereby. If the last part of the charge stated the law then the first part was more favorable to defendant than was her right, and if confusion was occasioned thereby it could not have been to the disadvantage of defendant. The last part of the instruction correctly stated the law. We do not approve of the submission of issues under the head "as the prosecuting attorney claims." No point is made on this, however.

The other errors assigned have been examined but as they relate to subjects not pressed upon the argument we pass them with the observation that they disclose no error resulting in a miscarriage of justice.

The conviction is set aside and a new trial ordered and defendant is remanded to the custody of the sheriff of the county of Oakland.

FELLOWS, BIRD and MOORE, JJ., concurred with WIEST, C. J. MCDONALD, J., concurred in the result.

SHARPE, J. (*dissenting*). 1. The prosecuting attorney relied on the holding in *Zimmerman* v. *Whiteley*, 134 Mich. 39, 44, to justify the action taken by him. The trial court also doubtless had it in mind. The action was for alienation of affections, brought by a husband against the mother of his wife. When examined by his counsel, plaintiff testified to certain statements made to him by his wife. The defendant called the wife for the purpose of interrogating her as to whether she had made such statements. She was, as here, not permitted to be sworn as a witness. The court said:

"The offer of this witness is assigned as error. This contention cannot be maintained upon any theory. The defendant's daughter was a competent witness. He might have waived the privilege. He chose not to. Defendant was not under obligation to ask plaintiff or his counsel privately whether he would consent that his wife might be a witness. Defendant was entitled to make the offer in open court. It was also entirely competent for the jury to know that the plaintiff refused to let his wife testify in regard to the words he had himself placed in her mouth. In *Rice* v. *Rice*, 104 Mich. 371, the same offer was made in open court, and the same ruling had."

The only distinction is in the fact that *Zimmerman* v. *Whiteley* was a civil case. The error complained of is not that the statute was violated by permitting

the husband to be examined as a witness, but that the jury were prejudiced by the request that he be called and the objection of the defendant which necessarily followed. If the rights of a litigant, whether criminal or civil, have been violated by an error committed on the trial, which, in the opinion of this court, affected the verdict of the jury, a new trial should always be granted. I can see no reason for applying this rule any differently in criminal than in civil cases. No such distinction is noted in any of the cases. In *People* v. *Osborn*, 205 Mich. 531, where a somewhat similar question was under consideration, a number of civil cases were cited, illustrative of the rule that such misconduct on the part of counsel may be cured by an instruction of the court. I think the *Zimmerman Case* was correctly decided and that we should follow it.

2. I am also of the opinion that if an error was committed by the prosecuting attorney it was cured by that part of the charge of the court quoted in the opinion of the Chief Justice. The jury were instructed in no uncertain language that they must not "consider or give any weight" to the fact that defendant's husband was called as a witness, that "respondent is not to be prejudiced by the making of such objection and, therefore, you will leave that whole matter out of your deliberation entirely." That the error might be cured seems to be conceded. An error, somewhat similar, and it would seem quite as prejudicial, was held to have been cured in *People* v. *Osborn, supra.* The only difference I can see in the curative language of the instruction in that case and that here used was that the court, besides telling the jury that "the fact that it (the question) was asked should have no influence upon your mind whatever," also said to them that "the asking of the question was not lawful." The sustaining of an objection to any question asked is, in

effect, a holding that it is "not lawful" to ask it. Such a statement by the court does not, in my opinion, tend to add such weight to the instruction given as would cause the jury to be more deeply impressed by it.

Can we say as a matter of law that the failure of the court to accompany his ruling excluding the testimony "by an unqualified admonition of the unlawfulness of the calling" prejudiced the defendant? It seems to me that we place a very low estimate upon the intelligence of the average jury when we assume that they will not obey the instruction of the court that they should "leave that whole matter out of your deliberation entirely," unless the court at the same time reprimands the prosecuting attorney for making the offer.

But I think we should say upon this record that the conduct of the prosecuting attorney was not such as would have warranted the trial court in reprimanding him. He but followed the course which had been approved of by this court in *Zimmerman* v. *Whiteley, supra.* Can it be said that his failure to foresee that this court would hold that a different rule is to be applied to such a procedure in civil and criminal cases is any indication that he was not acting in good faith? If satisfied that he was so acting, we think there are few judicial officers who would feel that his conduct deserved a reprimand even though it "was not lawful." Attorneys are officers of the court and the interests of their clients demand that their conduct, unless flagrant, shall not be criticized in a manner calculated to disparage them in the eyes of the jury. *McIntosh* v. *McIntosh,* 79 Mich. 198; *McDuff* v. *Journal Co.,* 84 Mich. 1 (22 Am. St. Rep. 673); *Williams* v. *West Bay City,* 119 Mich. 395; *People* v. *O'Hare,* 124 Mich. 515; *People* v. *Leonzo,* 181 Mich. 41.

In *People* v. *Boyd*, 151 Mich. 577, 580, this court, speaking through Mr. Justice CARPENTER, said:

"We are not called upon to say whether or not the prosecuting attorney was correct in this legal position. He made the claim in good faith and he had a right to make it."

He then quotes the following from the opinion of Mr. Justice MONTGOMERY in *Knickerbocker* v. *Worthing*, 138 Mich. 224, 239:

"The lawyer is not bound to guarantee that his position on the legal questions that arise during the progress of a trial shall in all cases be unassailable. To impose such a burden upon counsel would render fair discussion of legal questions impossible, and would withdraw from the trial judge the great aid now derived from arguments of counsel."

I concur in the conclusions reached by the Chief Justice on the other questions discussed by him.

The judgment should be affirmed.

CLARK and STEERE, JJ., concurred with SHARPE, J.